(C. D. 956)

JOHN HEATHCOAT & CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 11, 1945)

*Puckhafer, Rode & Rode* (*Howard C. Carter* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Dorothy C. Bennett,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: A quantity of merchandise described on the invoices as rayon nets and rayon nets in the gray was imported at the port of New York and assessed with duty at 65 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930 as modified by the trade agreement with Great Britain (T. D. 49753). The paragraph, as so modified, provides for:

Nets and nettings made on the bobbinet machine, not embroidered:
 * * * * * * *
Wholly or in chief value of rayon or other synthetic textile * * *

Before this modification the paragraph provided, among other things, for:

\* \* \* all fabrics and articles made on a lace or net machine \* \* \*.

In addition to this regular duty, there was assessed a countervailing duty of 5.69 pence per pound under section 303 of the same act, by virtue of the order of the Secretary of the Treasury (T. D. 47594) which extended the effective date of the countervailing duty rates published in T. D. 47502, which, in turn, supplemented T. D. 43634. Said 5.69 pence per pound represents the net amount of the bounty found by the Secretary to have been paid by the British Government upon the exportation of artificial silk fabrics from England, by means of a drawback of double the amount of the British excise tax which had been paid on such merchandise.

The order of the Secretary in which the net amount of the bounty was declared (T. D. 47502) describes the merchandise upon which countervailing duties were to be collected as follows:

(1) Artificial silk fabrics made from artificial silk on which a British excise tax of 6 pence per pound has been assessed and on which a drawback of 12 pence per pound has been allowed.

The order further states that:

The net amount of bounties or grants on the commodities described above are hereby ascertained, determined, and declared to be the amounts set forth in the above table.

There is no dispute about the regular duty, but plaintiff herein claims that rayon nettings are not "fabrics" such as are described in said T. D. 47502, and therefore he contends that the Secretary has never ascertained and determined or estimated the net amount of any bounty or grant on merchandise like that in suit, nor has he declared the net amount so determined or estimated.

The Government contends that nets and nettings are fabrics, both in their common and trade meanings, and have been so classified since the enactment of the Tariff Act of 1930; that the amendment to paragraph 1529 (a), *supra*, by the British Trade Agreement merely served to carve out of that paragraph one form of "fabrics \* \* \* made on a \* \* \* net machine," viz, "Nets and nettings made on the bobbinet machine," and to reduce the duty thereon from 90 per centum to 65 per centum.

At the trial plaintiff's counsel offered and there were received in evidence the official papers forwarded by the collector to the court, together with two illustrative samples of the merchandise, which counsel agreed are representative of the merchandise here involved except as to widths and lengths.

On the part of the Government, evidence was introduced in the form of testimony of the Government examiner who had passed upon this line of merchandise at the port of New York for over 15 years and

who advisorily classified the goods now before us. He testified that during his experience he had investigated the methods of manufacturing rayon nettings and also the machines on which they are made, although he stated that in this country the bobbinet machine is the only net machine available for close study. From his testimony it is clear that since the enactment of the Tariff Act of 1930, this type of merchandise has been classified as rayon "fabrics * * * made on a * * * net machine, by whatever name known," under the provision therefor in paragraph 1529 (a).

There were also introduced by the Government two entry papers of merchandise entered in 1935 and 1938, respectively, covering importations of rayon nettings similar to those here involved made by the same manufacturer and brought into the United States by the same importer. The Government examiner testified that he had advisorily classified the rayon nettings in both of these importations as "rayon fabrics made on a net machine," under said paragraph 1529 (a).

In answer to interrogations as to the administrative practice under prior tariff acts, the examiner pointed out that there was a specific provision in paragraph 1430 of the Tariff Act of 1922 for nets or nettings, wholly or in chief value of products of cellulose described in paragraph 1213 of that act, but that with the enactment of the Tariff Act of 1930, the only provision in that act which included rayon nets and nettings was found in the paragraph now under discussion, 1529 (a), which covered fabrics made on a net machine.

This witness further testified that in his discussions with importers of artificial silk nets and nettings during his many years of experience they had referred to such goods as fabrics.

The plaintiff herein did not dispute notations on the invoice in this case furnished by the foreign manufacturer as to the amount of the excise duty paid on the rayon content and the drawback on such rayon content of the merchandise at bar. Nor is it disputed that such action would constitute a bounty or grant. It, therefore, is clear that the British Government did, in fact, grant a bounty such as is contemplated by section 303, *supra*, on the exportation of this merchandise. Plaintiff also admits in its brief that there is no doubt that a net or netting is a fabric in the generic sense of that term, but claims that it is not a fabric in the tariff sense. However, the cases cited in support of this proposition fail to sustain plaintiff's contention. In the case of *Bullocks, Inc.* v. *United States*, 6 Cust. Ct. 110, C. D. 441, regular duty was assessed on silk mufflers as "articles," whereas countervailing duty was assessed under the classification of "fabrics." In *Joseph Schmidt, Inc.* v. *United States*, 9 Cust. Ct. 188, C. D. 690, papier-mâché figures were classified as toy figures for countervailing duty purposes but held to be "manufactures of papier-mâché, not specially provided for," for regular duty purposes. In both cases the court held in effect that if the merchandise did not fall under a

certain designation for regular duty purposes, there would seem to be no justification for holding it classifiable under that designation for countervailing duty purposes. However, the decision of the court in each case was based upon the inconsistency of the two classifications. In the case at bar no such inconsistency exists. Plaintiff admits that the generic term "fabrics" includes nets or nettings, and it is plain that the merchandise here before us has been classified as rayon "fabrics" for all purposes, but that the assessment for regular duty purposes was made at the rate applicable to one class of fabrics, i. e., nets and nettings made on a bobbinet machine.

Inasmuch as plaintiff concedes that a net or netting is a fabric in the generic sense of that term, it is unnecessary to set forth dictionary definitions of the terms in dispute.

It is interesting to note that in the pamphlet entitled "Commodities and Imports Under the Proposed British-United States Trade Agreement," which enumerates products on which the United States announced that it would consider granting concessions to Great Britain when the British Trade Agreement was in process of negotiation, being Senate Document No. 156, 75th Congress, 3rd Session, we find the following in the Department of State notice on page VI:

For the purpose of facilitating identification of the articles listed, reference is made in the list to the paragraph numbers of the tariff schedules in the Tariff Act of 1930 * * *. The descriptive phraseology is however in many cases limited to a narrower field than that covered by the numbered tariff paragraph or section in the revenue acts. * * *

This would seem to indicate that it was the intention in negotiating a trade agreement with Great Britain to grant a concession in the rate of duty on certain articles or merchandise included within the purview of said paragraph 1529 (a) and in carrying out that intention it became necessary to describe such articles more specifically than the legislative body had described them in enacting the paragraph. The necessity for specific designations can readily be seen by an examination of the modifications in the paragraph as shown in the United States Tariff Commission's publication entitled "Changes in Import Duties Since 1930, Revised Edition," under date of February 1, 1943. Whereas the paragraph as originally enacted in the Tariff Act of 1930 provided a rate of 90 per centum ad valorem for all of the commodities enumerated therein (with the exception of certain hose and half-hose), the modifications provided for various reductions in that rate of duty ranging from 45 per centum to 65 per centum under the various trade agreements. In the case of the British Trade Agreement, nets and nettings were carved out of the general term "all fabrics and articles made on a * * * net machine," and granted a reduction in duty if "not embroidered" and "wholly or in chief value of rayon or other synthetic textile." By thus carving out of the paragraph one form of "fabrics * * * made on a * * *

net machine," viz, "Nets and nettings made on a bobbinet machine," the negotiators of the trade agreement certainly could not have intended that such nets and nettings should no longer be regarded as "fabrics."

The Secretary, in declaring the net amount of the bounty or grant paid by the British Government in the form of drawback on the exportation of certain merchandise, thus subjecting such merchandise to the assessment of countervailing duty under section 303, *supra*, described the merchandise in general terms, viz, "Artificial silk fabrics made from artificial silk." There is no dispute that artificial silk fabrics include rayon fabrics. It is the opinion of the court, and we so hold that this general description was intended to and does include the nets and netting here involved and that the assessment of countervailing duty thereon under said T. D. 47594, T. D. 47502, and T. D. 43634 was proper.

Plaintiff's claim is therefore overruled. Judgment will be rendered for the defendant.